JOURNAL ENTRY and OPINION
Appellant Thomas Darden appeals a decision by the trial court in favor of Appellee Sheryl Darden (nka Sheryl Sutler) on her motions to show cause and for attorney fees. Thomas Darden assigns the following three errors for our review:
 I. THE TRIAL COURT ERRED IN FINDING APPELLANT IN CONTEMPT OF ITS PRIOR ORDERS ENTERED JUNE 9, 1994, VOL. 2392, PG. 262 AND JANUARY 17, 1995, VOL. 2534, PG. 958.
 II. THE TRIAL COURT ERRED IN CALCULATING APPELLANT'S OBLIGATION TO PAY PAST DUE CHILD SUPPORT, ATTORNEY FEES AND ACCRUED INTEREST FROM THE TRIAL COURT'S JUDGMENT ENTRIES DATED JUNE 9, 1994, VOL. 2392, PG. 262 AND JANUARY 17, 1995, VOL. 2534, OG. 958.
 III. THE TRIAL COURT ERRED IN AWARDING APPELLEE ATTORNEY FEES AND IN FAILING TO REVIEW ITS PRIOR AWARDS OF ATTORNEY FEES RETROACTIVE TO THE JUDGMENT ENTERED MARCH 5, 1992, VOL. 1936, PG. 494.
Sheryl Darden cross-appeals and assigns the following four errors for our review:
 I. THE TRIAL COURT ERRED TO THE APPELLEE'S DETRIMENT BY DISREGARDING THE MAGISTRATE'S CALCULATIONS WHERE PAYMENTS WERE APPLIED TO ACCRUED INTEREST AND THEN PRINCIPAL.
 II. THE TRIAL COURT ERRED IN REDUCING APPELLEE'S ATTORNEY FEE AWARD FOLLOWING A FINDING THAT APPELLANT WAS IN CONTEMPT.
 III. THE COURT ERRED BY REDUCING THE PURGE AMOUNT FOR APPELLANT'S ONGOING CONTEMPT OF THE COURT'S ORDERS.
 IV. THE COURT ERRED BY FAILING TO ORDER THE PAYMENT OF ATTORNEY FEES FOR APPELLANT'S CONTEMPT BY MEANS OF A WAGE WITHHOLDING ORDER.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On February 14, 1977, the trial court granted Thomas Darden and Sheryl Darden a divorce award and custody of the minor child, Todd, (D.O.B. 01/02/76) to Sheryl Darden, with an order for Thomas Darden to pay child support. Sixteen years later on May 7, 1993, Thomas Darden filed a motion to reduce the child support. Darden argued his income had been reduced, his living and other expenses increased; additionally, he argued from his second divorce the court had imposed a $303.00 per month child support order for another child. He also argued the trial court should re-evaluate Sheryl Darden's earning capacity.
On March 4, 1994, Sheryl Darden filed motions for contempt of court and for attorney fees due to Thomas Darden's failure to pay child support as ordered. In its June 9, 1994 order, the trial court found Darden in contempt and found that he owed back child support in the amount of $64,994.30. To pay this arrearage off, the trial court ordered him to pay Sheryl Darden through CSEA $10,000 by July 31, 1994; pay 65% of his income or maximum allowed by law towards the arrearage; and to assign to Sheryl all commission due him as an professional athlete.
The court scheduled a hearing on Sheryl Darden's motion for attorney fees for January 17, 1995. Neither Thomas Darden nor his attorney appeared at the fee hearing. The court determined that Darden failed to satisfy his $64,994.30 arrearage or to make the payments mandated by the court's order that he pay CSEA 65% of his net income. The court ruled that Sheryl Darden had incurred attorney fees totaling $54,390 plus $229.00 in costs for a total of $54,619.00 and ordered Thomas Darden to pay those fees and costs. The trial court found that Thomas Darden had amassed more than two dozen contempt findings and sentenced him to 90 days in jail.
On May 24, 1995, Thomas Darden filed a motion for relief from judgment, a motion to suspend execution of his jail sentencependente lite and, in the alternative, a motion to modify the trial court's judgments. Thomas Darden argued that the trial court's contempt finding was erroneous and that he had, in fact, made a $20,000 payment to CSEA in April 1993 and a $10,000 payment to CSEA on February 28, 1995. Thomas Darden also argued he was not properly served with notice of the January 17, 1995 hearing.
The trial court granted Thomas Darden's motion to suspend execution of his jail sentence. In a July 10, 1995 journal entry, the trial court denied Darden's other motions and denied his claim of lack of personal jurisdiction. The court held that the "court's prior order sentencing defendant to 90 days in jail shall be enforced unless Defendant purges his contempt by paying $10,000 toward his arrearages within 30 days of journalization of this entry." Darden was ordered to return to court on August 10, 1995 for a review of his compliance with the court's orders.
On July 20, 1995, Darden filed an appeal (App. No. 69322) of the trial court's decision. In a journal entry dated August 10, 1995, the trial court found that Darden failed to purge himself of his contempt, and ordered the immediate execution of his jail sentence. On August 21, 1995, Thomas Darden filed a motion to stay execution of the jail sentence and a motion for bond. Darden filed another notice of appeal (App. No. 69453) challenging the court's August 10, 1995 order. In Darden v. Darden (May 2, 1996), Cuyahoga App. Nos. 69322, 69453, this court affirmed the trial court's judgment. We held that, since Thomas Darden appeared at the May 18, 1994 hearing, he was precluded from raising the lack of personal jurisdiction in the case. We also held that Thomas Darden invoked the continuing jurisdiction of the domestic relations court by filing a motion to modify child support. In upholding the trial court's finding that Thomas Darden failed to purge himself of contempt, we noted that Thomas Darden failed to appear at the hearing on January 17, 1995 and that he failed to make any support payments after the May 18, 1994 hearing.
We also upheld the trial court's decision to order Thomas Darden's jail term into execution. Citing Thomas Darden's long-standing history of failing to meet his child-support obligations, we reasoned that Thomas Darden failed to comply with the stipulations he made at the May 18, 1994 hearing and presented no competent evidence that he was financially unable to meet his obligations.
On December 2, 1996, Sheryl Darden filed a motion to show cause and a motion for attorney fees. A hearing on the motion was originally set for February 18, 1997. The hearing was continued several times, finally being conducted on August 11, 1997. On February 19, 1998, the Magistrate issued his report and recommendation.
The Magistrate found that Thomas Darden had $10,110.84 in income for 1996 from the Bert Bell NFL Players Retirement Trust and that he failed to pay at least 65% of that income to Sheryl Darden as required by the trial court's order of June 9, 1994. The Magistrate also found that Thomas Darden was required to make two lump sum payments of $10,000 each and one payment of $12,500 in addition to the 65% of his income. The Magistrate also found Thomas Darden in contempt of court for failing to obey the trial court's order of January 17, 1995 and recommended that Thomas Darden be sentenced to 90 days in jail or 500 hours of community service which was to be suspended if Thomas Darden purged his contempt by paying a lump sum of $11,492.05 plus 2% processing fee and by making monthly payments of $547.67 plus 2% processing fee through CESA for 12 months or until the arrearage is fully paid, whichever comes first.
The Magistrate also calculated the amount of interest on the unpaid support award and on the attorney fee award as $12,387.22. He also ordered Thomas Darden to continue to pay at least $547.67 per month plus a processing fee on his support obligation. The Magistrate also ordered Thomas Darden to pay $21,863.56 towards Sheryl Darden's attorney fees. The Magistrate also ordered that additional interest would accrue on the judgment effective August 11, 1997.
In an amended journal entry filed March 16, 1998, the Magistrate again found Thomas Darden to be in contempt and recommended that he be sentenced to 90 days in jail. The Magistrate stated that Thomas Darden could purge his contempt by making a lump sum payment of $11,492.05. After calculating the accrued interest on the judgment and deducting the payments made to CSEA by Thomas Darden, the Magistrate concluded that total unpaid accrued interest on the court's prior judgments was $12,387.22. The Magistrate also found that, as of August 11, 1997, Thomas Darden was in arrears in the amount of $114,920.49. The Magistrate sentenced Thomas Darden to 90 days in jail or 500 hours community service and ordered that the contempt could be purged if Thomas Darden paid $11,492.05 plus a 2% processing charge to CSEA within 30 days. The Magistrate ordered Thomas Darden to continue paying at least $547.67 through CSEA until his arrearage was fully paid. The Magistrate also ordered that, effective August 11, 1997, additional interest would accrue on the principal balance of $60,301.49. The Magistrate also ordered Thomas Darden to pay $21,863.56 to Sheryl Darden for attorney fees as additional spousal support.
On April 23, 1998, the trial court issued an order adopting the Magistrate's decision, but that order was vacated on April 30, 1998 under Civ.R. 60(A). On April 29, 1998, Thomas Darden filed objections to the amended Magistrate's decision. In a journal entry dated October 13, 1998, the trial court sustained Thomas Darden's objections and modified the Magistrate's decision finding Thomas Darden in contempt of the trial court's prior orders and that he had a child support arrearage of $39,429.58 as of August 11, 1997. The court found that the magistrate erroneously concluded that Darden was required to make two lump sum payments of $10,000 each and one payment of $12,500 and found that Darden was ordered to make one lump sum payment of $10,000. The trial court ordered that Thomas Darden could purge his contempt by paying $5,000. The interest accrued on the prior judgment through August 11, 1997 was calculated as $16,677.28. Sheryl Darden was awarded $10,000 in additional attorney fees. Thomas Darden was ordered to continue paying $547.67 plus 2% processing charge to CSEA until his arrearage was fully paid. These appeals followed.
In his first assignment of error, Thomas Darden argues the trial court erred in finding him in contempt of its June 9, 1994 and January 17, 1995 orders. Thomas Darden argues that he paid the $10,000 purge amount plus an additional $15,588.80. Thomas Darden acknowledges that this court added $5,000 to the original $10,000 supersedeas bond amount imposed in connection with a stay of the trial court's order pending his first appeal to this court. Nevertheless, he argues that his payments of $10,558.80 amounted to more than 65% of his gross income between June 4, 1994 and December 6, 1996 and, therefore, constituted compliance with the trial court's orders. He further argues that, since there was no set installment plan for Thomas Darden to pay 65% of his net income, his failure to make any payments from January 1, 1997 through August 11, 1997 was not a proper basis for a contempt finding.
"Contempt is the disobedience of a lawful court order."Windham Bank v. Tomaszczyk (1971), 27 Ohio St.2d 55,271 N.E.2d 815, paragraph one of the syllabus. Contempt actions are authorized under R.C. 2705.031(B)(1) which provides that "any party who has a legal claim to any support ordered for a child * * * may initiate a contempt action for failure to pay the support." In order to prove contempt for failure to comply with a court order of support, the movant must prove, by clear and convincing evidence, that the defendant violated the court's order at issue. Rinehartv. Rinehart (1993), 87 Ohio App.3d 325, 328, 622 N.E.2d 359, 360. Thereafter, the non-movant must establish, by a preponderance of the evidence, a defense for his nonpayment. State ex rel. Thurmanv. Thurman (May 12, 1999), Medina App. No. 2765-M, unreported, citing Rinehart, 87 Ohio App.3d at 328, 622 N.E.2d at 361. A trial court's contempt finding will not be reversed on appeal absent an abuse of discretion. State ex rel. Delco Moraine Div., GeneralMotors Corp. v. Indus. Comm. (1990), 48 Ohio St.3d 43, 44,549 N.E.2d 162, 163; Denovchek v. Bd. of Trumbull Cty. Commrs. (1988),36 Ohio St.3d 14, 16, 520 N.E.2d 1362, 1364; State ex rel. Ventronev. Birkel (1981), 65 Ohio St.2d 10, 11, 417 N.E.2d 1249, 1250;State v. Moody (1996), 116 Ohio App.3d 176, 181, 687 N.E.2d 320,323; State v. McDermott (1991), 73 Ohio App.3d 689, 692,598 N.E.2d 147, 149.
Our review of the trial court's journal entry of June 9, 1994 reveals that Thomas Darden was ordered to pay Sheryl Darden the sum of $10,000 by July 31, 1994. The record reveals that no payments were received by that date. In its January 17, 1995 order, the trial court found Darden in contempt of the June 9, 1994 order and sentenced him to 90 days in jail. In its July 10, 1995 order, the trial court held that Thomas Darden could purge his contempt by paying $10,000 toward his arrearages within 30 days. In order to purge his contempt, Thomas Darden would have had to pay $10,000 by August 10, 1995. The record is undisputed that he failed to do so. Darden did eventually obtain a stay of the July 10, 1995 judgment pending appeal, but the motion for stay was not filed until August 21, 1995, well after the court's August 10, 1995 deadline for Thomas Darden to purge his contempt.
Thomas Darden also argues that, from June 4, 1994 to December 6, 1996, he made payments totaling $25,588.80. The record shows that Darden made a payment of $10,000 on March 1, 1995 and a payment of $15,000 on November 8, 1996. Darden argues that those payments amounted to more than 65% of his gross income for that time period and, consequently, he was not in contempt of the court's June 9, 1994 order to pay Sheryl Darden 65% of his net income.
The record revealed that Thomas Darden was sentenced to 90 days in jail on August 16, 1993 for contempt. While serving his sentence, Darden pleaded guilty to a criminal nonsupport charge. On October 12, 1993, Darden was sentenced to six months in jail for the. criminal non-support. Execution of the sentence was suspended and Darden was placed on two year's probation beginning November 16, 1993. Darden was ordered to pay $10,000 to the probation department by October 15, 1993. The money was to be transferred to CSEA for distribution to Sheryl Darden. Darden completed his sentence for the contempt charge and was released from jail on November 14, 1993. On October 12, 1994, Darden was found to be in violation of his probation. His probation was continued and Darden was ordered to pay $10,000 to the probation department by January 17, 1995. The money was to be paid in three installments — the first of which was due by November 15, 1994.
Another probation violation hearing was held on December 8, 1994. However, Darden failed to appear. The court found him to be a probation violator, sentenced him to six months in jail, and issued a capias for his arrest. The record shows that Darden made a payment of $10,000 on March 1, 1995. Two months later, he filed a motion in common pleas court seeking to vacate the judgment that he was a probation violator. The judgment was vacated on May 25, 1995. This sequence of events makes clear that the $10,000 payment on March 1, 1995 was made in order to avoid serving six months in jail for the criminal non-support conviction.
We turn now to the $15,000 payment made by Darden on November 8, 1996, After the 90 day jail sentence imposed upon Thomas Darden for contempt was affirmed by this court on May 2, 1996, a capias
was ordered for his arrest. On October 4, 1996, Sheryl Darden moved for judgment against the company that wrote the $15,000 supersedeas bond posted by Thomas Darden while his appeal was pending. In an agreed judgment entry signed on November 7, 1996 and filed on November 8, 1996, Darden agreed to pay $15,000 to CSEA. Upon CSEA's receipt of the payment, the agreed entry provided that Fidelity and Deposit Company of Maryland would be released from its obligation on the supersedeas bond. The agreement also provided that, upon CSEA's receipt of the $15,000, Thomas Darden would be released from the remainder of his 90 day jail sentence. (R. 335.) The agreement further provided that "if Defendant fails to comply with this order, and/or a judgment is rendered against the bonding company * * * Defendant Darden shall immediately serve the remainder of his 90 day jail sentence." Thereafter, on November 8, 1996, Darden made a payment of $15,000. However, as of August 11, 1997, Darden remained in arrears on his support obligation in the amount of $39,429.58. His failure to satisfy his support obligation authorized the trial court to find him in contempt. Accordingly, the trial court's contempt finding did not constitute an abuse of discretion. Thomas Darden's first assigned error is overruled.
In his second assigned error, Thomas Darden argues the trial court erred in calculating his obligation to pay past due child support, attorney fees, and accrued interest from the trial court's June 9, 1994 and January 17, 1995 journal entries. Thomas Darden argues the trial court erroneously relied on a statement in its June 9, 1994 judgment entry which provided that Thomas Darden's arrearages totaled $64,994.30 without differentiating between child support and attorney fee judgments. However, our review of the record makes clear that the trial court calculated Thomas Darden's attorney fee judgment separately at the hearing held on January 17, 1995. The journal entry contained the following provision as to attorney fees:
 Finally, the Court finds that Plaintiff has incurred attorney fees in the prosecution of her many motions, dating back to June 14, 1991, totaling three hundred sixty-two and six tenths (362.6), plus costs advanced by Plaintiff's counsel in the amount of $229.00. The court further finds that the hourly rate charged by Plaintiff's attorney, $150.00 is reasonable in the greater Cleveland area * * *.
(Journal entry of 1/17/95 at 4-5.)
The court multiplied $150.00 by 362.6 to arrive at its total of $54,390 in attorney's fees.
We reject Thomas Darden's attempt to challenge the trial court's calculation of his child support arrearage as of June 9, 1994. Because Thomas Darden did not timely appeal from the trial court's judgment, he is barred from asserting any error in the trial court's calculations. Though Darden asserts that the June 9, 1994 and January 17, 1995 journal entries were "the subject of" his prior appeal to this court, we must note that in Darden v. Darden
(May 2, 1996), Cuyahoga App. Nos. 69322, 69453, unreported, we specifically rejected his attempts to challenge those orders.
 Thomas Darden's [May 24, 1995] motion [for relief from judgment] generally requested the court reconsider several of its prior rulings and raised issues which should have been raised in prior direct appeals. It is well settled, however, that motions for relief from judgment are not a substitute for timely direct appeals.
Darden. Darden's second assigned error is overruled.
In his third assigned error, Thomas Darden argues the trial court erred in awarding Sheryl Darden attorney fees and in failing to review its prior awards of attorney fees retroactive to its March 5, 1992 judgment. As we did in our discussion of Darden's second assigned error, we again refuse Darden's request that we review orders from which no appeal was taken. Darden's third assigned error is overruled.
In her first cross-assigned error, Sheryl Darden argues the trial court erred to the appellee's detriment by disregarding the Magistrate's calculations where payments were applied to accrued interest and then principal. We disagree.
Sheryl Darden argues that, where interest is payable annually, payments should be applied first to interest due upon interest, then to interest due upon the principal, and finally to the principal. Sys. Data, Inc. v. Visi Trak Corp. (Ohio Mun. 1995),72 Ohio Misc.2d 8, 10, 655 N.E.2d 287, 288, citing Prepakt ConcreteCo. v. Koski Constr. Co. (1989), 60 Ohio App.3d 28, 31,573 N.E.2d 209, 213; Anketel v. Converse (1866), 17 Ohio St. 11 at paragraph four of the syllabus. See, also, Evans v. Buckeye Union Ins. Co.
(1993), 94 Ohio App.3d 378, 381, 640 N.E.2d 1153, 1155; Viock v.Stowe-Woodward Co. (1989), 59 Ohio App.3d 3, 8, 569 N.E.2d 1070,1075.
However, in this case, the payments rendered by Thomas Darden were made through CSEA. OAC 5101:1-31-14 sets forth the proper sequence for applying payments made through CSEA. Under OAC5101:1-31-14(A), payments through CSEA are to be applied to child support arrearages before being applied to interest on arrearages. The trial court did not err in first applying Thomas Darden's payments to the principal amount of his arrearage. Accordingly, we reject Sheryl Darden's first cross-assigned error.
In her second cross-assigned error, Sheryl Darden argues the trial court erred in reducing her attorney fee award following a finding that Thomas Darden was in contempt. Our review of the trial court's decision on Thomas Darden's request for attorney fees must be guided by an abuse of discretion standard. Dunbar v.Dunbar (1994), 68 Ohio St.3d 369, 371, 627 N.E.2d 532, 534, citingRand v. Rand (1985), 18 Ohio St.3d 356, 481 N.E.2d 609; Slowbe v.Slowbe (Jan. 13, 2000), Cuyahoga App. No. 75520, unreported;Parzynski v. Parzynski (1992), 85 Ohio App.3d 423, 439,620 N.E.2d 93, 104, appeal dismissed (1993), 67 Ohio St.3d 1450,619 N.E.2d 419. The court's decision will be upheld unless its ruling evidences an unreasonable, arbitrary, or unconscionable attitude.
In this case, the trial court heard testimony from Sheryl Darden's trial counsel, John Ready, describing the work he performed on the case. Ready testified that he was seeking nearly $22,000 in attorney fees for services rendered since January 17, 1995. However, Sheryl Darden's motion for attorney fees was not filed until December 2, 1996. It has been held to be improper for a court to award fees incurred prior to the filing of a motion for fees. Seagraves v. Seagraves (1997), 125 Ohio App.3d 98, 102,707 N.E.2d 1165, 1167.
 Our holding is based upon the premise that the party against whom relief, in this instance an award of fees, is sought is entitled to timely notice of the intent to seek such relief. Without notice, we conclude that it would be unfair to require a party to pay for fees which may, as is the case here, have been incurred by the other party over a period of years. However, once notice of the intent to seek attorney fees is given, the party against whom the motion is made acts at his own risk if he continues to engage in protracted litigation.
Id.
Because the Magistrate's attorney fee award included amounts for services rendered prior to the date Sheryl Darden filed her motion for attorney fees, the attorney fee award was properly reduced by the trial court. Sheryl Darden's second cross-assigned error is overruled.
In her third assigned error, Sheryl Darden argues the court erred by reducing the purge amount for appellant's ongoing contempt of the court's orders.
A reviewing court will not reverse a lower court's decision in a contempt proceeding absent an abuse of discretion. State ex rel.Delco Moraine Div., General Motors Corp. v. Indus. Comm. (1990),48 Ohio St.3d 43, 44, 549 N.E.2d 162, 163; Briede v. Heaberlin (Feb. 19, 1991), Butler App. No. CA90-08-157, unreported. Sheryl Darden's conclusory assertion that the trial court erred in reducing the purge amount falls far short of establishing an abuse of discretion that would necessitate a reversal. Sheryl Darden's third cross-assigned error is without merit.
In her fourth cross-assigned error, Sheryl Darden argues that the trial court erred by failing to order the payment of attorney fees for appellant's contempt by means of a wage withholding order. Sheryl Darden cites Hamilton v. Hamilton (1998), 40 Ohio App.3d 190,532 N.E.2d 213 and argues that, under R.C. 3113.21, attorney fee awards in child support enforcement proceedings constitute additional child support and are subject to mandatory wage withholding orders.
R.C. 3113.21 provides that in actions where support is ordered under specified sections of the Ohio Revised Code including R.C.3105.21 (Child Support), the court shall require the withholding or deduction of the obligor's income or assets by a wage order or other appropriate order. Also, R.C. 3105.21 provides that "each order for child support made or modified under this section shall include as part of the order a general provision, as described in division (A)(1) of Section 3113.21 of the Revised Code, requiring the withholding or deduction of income or assets of the obligor under the order as described in division (D) of Section 3113.21 of the Revised Code, or another type of appropriate requirement."
In Hamilton, the court ruled that attorney fees necessitated by noncompliance with a child support order are "child support" and are subject to the wage withholding provisions of R.C. 3113.21.Hamilton, 40 Ohio App.3d at 193, 532 N.E.2d at 216. See, also,Bratton v. Frederick (1996), 109 Ohio App.3d 13, 17,671 N.E.2d 1030, 1033.
While we agree that the attorney fee award could properly be subject to a wage withholding order, we must point out that the withholding order already in place provides for payment of 65% of Thomas Darden's monthly income — the maximum allowable by law.
During oral argument before this court, Sheryl Darden's attorney argued that state law should control when determining the maximum amount of an obligor's income that can be subject to a wage withholding order. He also argued that Ohio trial courts may impose support orders without reference to the wage withholding limits set forth by federal law.
We agree that a trial court may properly order support in excess of the withholding limits imposed by R.C. 3113.21 and Section 1673(B), Title 15, U.S. Code. However, those provisions do restrict the trial court's ability to order wage withholdings beyond those limits. Arthur v. Arthur (Oct. 22, 1998), Fairfield App. Nos. 97CA0071, 98CA0023, unreported. In Roach v. Roach
(1989), 61 Ohio App.3d 315, 322, 572 N.E.2d 772, 776, this court noted that Ohio's garnishment statute (R.C. 3113.21) expressly adopted the withholding limits set forth in Section 1673(b), Title 15, U.S. Code.[1] See R.C. 3113.21(E) ("In no case shall the sum of the amount specified in the order to be withheld and any fee withheld by the person paying or otherwise distributing the obligor's income as a charge for its services exceed the maximum amount permitted under Section 303(b) of the `Consumer Credit Protection Act,' 15 U.S.C. § 1673(b).")
15 U.S.C. § 1673(b)(2)(A) defines the maximum allowable garnishment as follows:
 The maximum part of the aggregate disposable earnings[2]
of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed —
 (A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and (B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week; except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.
See, also, Hockenberry v. Hockenberry (1992), 75 Ohio App.3d 806,809, 600 N.E.2d 839, 841. Because the amount of the wage withholding order issued by the trial court for child support arrearages amounted to the maximum allowable by statute, we conclude that the trial court's decision not to issue an additional withholding order for attorney fees was proper. Sheryl Darden's fourth cross-assigned error is overruled.
Finding no merit to any of the assigned errors or cross-assigned errors, we affirm the decision of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Domestic Relations Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, P.J., and MICHAEL J. CORRIGAN, J., CONCUR.
 _______________________________ PATRICIA ANN BLACKMON, JUDGE
[1] Roach referred to an earlier version of R.C. 3113.21. The relevant section, then listed as R.C. 3113.21(D)(4) is now R.C. 3113.21(E).
[2] "With respect to garnishment proceedings, `disposable earnings' are net earnings which are payable after the deduction of those items required by law. Deductions required by law do not include any prior support orders, nor do they include voluntary payroll deductions. Nurse v. Portis (1987), 36 Ohio App.3d 60,520 N.E.2d 1372, at paragraph two of the syllabus.