OPINION
{¶ 1} Plaintiff, Jonathon R. Jackson, appeals from a decree ofdivorce terminating his marriage to Defendant, Teressa Jackson.
 {¶ 2} The parties were married in 1998. Both were employed.Jonathon[1] owned a house he had acquired from a prior divorce. He andTeressa agreed to live there until the house could be sold, when theywould move to a residence in the school district in which Teressa and herdaughter had resided and where the child continued to attend a schoolthat was able to meet her special needs.
 {¶ 3} Teressa worked to clean and improve the house. However, andbefore it could be sold, she was advised by officials of her preferredschool district that she would have to reestablish a residence there ifher daughter was to continue to attend the same school. Teressa and herdaughter then moved from Jonathon's house to an apartment in the desiredschool district.
 {¶ 4} The parties continued their marital relations after Teressaestablished her separate residence. Jonathon eventually decided that hewould not move. Tensions developed, and he filed for divorce. Teressafiled a counter-claim.
 {¶ 5} The matter was heard by a magistrate. The parties agreed onall issues except: (1) the value of Teressa's interest, if any, inJonathon's house; (2) the value of Teressa's interest in Jonathon'sretirement savings account; (3) medical debts and costs for Teressa'schild; and, (4) their mutual requests for attorney fees.
 {¶ 6} The magistrate rendered a decision. Jonathon filedobjections. The trial court overruled the objections and adopted thedecision as its order. Teressa petitioned the magistrate to correct aclerical error in the decision. The magistrate did. Jonathon objected.The trial court overruled the objection on the same day the decree ofdivorce was entered.
 {¶ 7} Jonathon filed a timely notice of appeal. He presents elevenassignments of error. They will be considered out of their order ofpresentation to facilitate our analysis of the issues involved.
 NINTH ASSIGNMENT OF ERROR
 {¶ 8} "The trial court committed prejudicial error by determiningthat this was a thirty month marriage."
 {¶ 9} The parties were married on July 4, 1998. The final hearingwas on November 1, 2001, forty-one months later. The magistrate foundthat the marriage effectively terminated on December 15, 2000, andtherefore had lasted thirty months.
 {¶ 10} Jonathon objected that the marriage actually terminated onlyten months after it began, when Teressa moved out of the maritalresidence. The trial court overruled the objection and adopted themagistrate's finding. The court found that Teressa left only in order tore-establish her residence in the preferred school district, for herdaughter's educational and medical needs, and that the parties "continuedto engage in sexual relations and attend functions as a family untilDecember 15, 2000." (Decision and Order, p. 2.) The court also found thatthe parties continued their efforts to find another marital residenceduring that time, as well as obtaining marital counseling.
 {¶ 11} Here, the matter of the duration of the parties' marriagerelates to property division. The court acted pursuant to the authorityconferred on it by R.C. 3105.171(A)(2)(b) when it found that, onprinciples of equity, the marriage terminated prior to the date of thefinal hearing.
 {¶ 12} Jonathon argues that the court abused its discretion when itfailed to find that, instead of thirty months, the marriage had lastedbut one year. He points out that after she moved from the maritalresidence Teressa made no financial contributions to support it. We mightagree with Jonathon had the parties not continued to maintain the otherelements of their marital relationship until the date on which the trialcourt found their marriage terminated. Jonathon doesn't dispute thecourt's findings in that regard. We find no abuse of discretion.
 {¶ 13} The ninth assignment of error is overruled.
 FIRST ASSIGNMENT OF ERROR
 {¶ 14} "The trial court committed prejudicial error by awarding theappellee the sum of five thousand eight hundred dollars for her claimedinterest in the real estate owned by the appellant."
 SECOND ASSIGNMENT OF ERROR
 {¶ 15} "The trial court committed prejudicial error by admittinginto evidence and basing its award pertaining to appellant's real estateon the greene county auditor's tax records."
 THIRD ASSIGNMENT OF ERROR
 {¶ 16} "The trial court's classification of the appreciationof the residence, based on the tax records as a marital asset wasagainst the manifest weight of the evidence."
 {¶ 17} These assignments of error each concern the trial court'saward of $5,810 to Teressa for her share of the amount by whichJonathon's house appreciated in value during their marriage. The courtfound that the marriage effectively terminated thirty months after itcommenced.
 {¶ 18} The house that Jonathon acquired through a prior divorcemany years before the parties were married was his separate property.R.C. 3105.171(A)(6)(a)(ii). The court was required to distribute theproperty to him, and it did. R.C. 3105.171(D).
 {¶ 19} The court is also required to divide the parties' maritalproperty equally between them. R.C. 3105.171(C)(1). Marital propertyincludes, inter alia, "all . . . appreciation on separate property, dueto the labor, monetary, or in-kind contribution of either or both spousesthat occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii).
 {¶ 20} The magistrate heard evidence that in furtherance of theirplan to sell Jonathon's house Teressa applied her labor to improve itscondition. The magistrate found that Teressa "did contribute her time,labor, and other efforts to the real estate while she resided there."(Decision, p. 1). There was also evidence that a new roof was installed.
 {¶ 21} The magistrate heard evidence that the appraised value ofthe house for purposes of real estate taxation increased from $141,800when the parties were married to $153,480 when the marriage terminated.The difference is $11,680. One-half of that is $5,840, which themagistrate awarded to Teressa as her share of the appreciation in theproperty's value. The trial court adopted the magistrate's decision andorder, over Jonathon's objection.
 {¶ 22} Jonathon argues that the court abused its discretion when it(1) relied on the appraised tax valuation of the house to find anincrease in its value and (2) found that no part of the increase was apassive increase but instead was the product of the parties' efforts toimprove the condition of the house.
 {¶ 23} Jonathon did not object when Teressa offered evidence of thereal estate tax appraisals in the hearing before the magistrate, exceptto complain that Teressa was not competent to identify copies of thecounty real estate tax records. (T. 45). Neither did Jonathon object tothe admissibility of that evidence in his objection to the magistrate'sdecision. Instead, he objected, as he does here, to the magistrate'sreliance on that evidence. He argues that such records are insufficientproof of the property's value. However, he doesn't explain why they arenot, and we are unaware of any reasons why they are not.
 {¶ 24} Real estate appraisals for tax purposes are competent,credible evidence of the value of real property. Judgments supported bysome competent, credible evidence will not be reversed as against themanifest weight of the evidence. C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279.
 {¶ 25} The court was required to determine the existence of maritalproperty and to value that property for purposes of its division. Taxrecords are admissible for that purpose because they are relevant toprove an issue which the court must determine. Evid.R. 410,402. There wasno other evidence of the property's value, though Teressa did state thata realtor had opined that it was possibly now worth $190,000, even morethan reflected in the tax records.
 {¶ 26} An argument that a judgment is against the manifest weightof the evidence goes to all the evidence. There is no evidence of theproperty's value other than the evidence discussed above. Jonathonsuggests that some of the increase was necessarily passive, or at leastnot the result of improvements the parties had made. However, there is noevidence to support those propositions.
 {¶ 27} The first, second, and third assignments of error areoverruled.
 FOURTH ASSIGNMENT OF ERROR
 {¶ 28} "The trial court committed prejudicial error and abusedits discretion by awarding appellee $12,500 from appellant's PSPaccount."
 {¶ 29} Jonathon maintained a Personal Savings Plan ("PSP") with hisemployer, General Motors. The funds were invested by his employer insecurities. The value of Jonathon's fund fluctuated with the market.
 {¶ 30} Jonathon made contributions to his PSP over a period offorty-eight months, including the thirty-month period during which thecourt found the parties were married. The magistrate found that the totalof the contributions Jonathon made over that thirty month period was$40,000 and awarded Teressa one-half of 30/48 of $40,000, or $12,500.
 {¶ 31} Jonathon objected to the magistrate's award. He argued: (1)that the marriage had lasted only ten months, not thirty; (2) that themagistrate should have considered the value of the PSP at the time of thehearing; and (3) that the magistrate failed to consider a $20,000 loanagainst the PSP that Jonathon had taken out. The trial court overruledhis objections and adopted the magistrate's decision.
 {¶ 32} On appeal, Jonathon raises again only the matters of theduration of the marriage and the loan, and both in relation to the$12,500 award to Teressa.[2]
 {¶ 33} Our prior determination of Jonathon's ninth assignment oferror, supra, necessarily operates to reject his contentions hereconcerning the length of the marriage in relation to the division of hisPSP. Any error in the court's failure to consider the $20,000 loan iswaived by statements that Jonathon's counsel made to the magistrateexcluding that matter from the court's consideration, which is discussedmore fully under the seventh assignment of error, infra.
 {¶ 34} The fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR
 {¶ 35} "The trial court committed prejudicial error by modifyingthe original award pertaining to the PSP account."
 {¶ 36} Jonathon presented this assignment of error together withthe fourth assignment, and the same argument for both. He complains thatthe marriage lasted but one year, not thirty months. He also complainsthat the court unreasonably extended that time to thirty months in orderto give Teressa a larger share of Jonathon's PSP account to compensateher for certain other expenditures. However, the court's decision doesn'treflect that it did that. All the court appears to have done was tomodify its award of Teressa's share of the PSP to correct a calculationerror, which is discussed under the eleventh assignment of error, infra.Further, the court acted within its discretion when it found that themarriage lasted thirty months instead of some lesser amount of time, aswe previously found.
 {¶ 37} The fifth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR
 {¶ 38} "The trial court committed prejudicial error by awardingattorney fees to appellee."
 {¶ 39} The magistrate's decision recommended that Jonathon "pay alump sum spousal support award as and for attorney fees in the amount of$500." Jonathon objected, arguing that Teressa's annual income was morethan double his own income since his retirement. The trial courtoverruled the objection, finding that "[t]he magistrate took into accountthe disparity between each party's income and awarded attorney feesaccordingly. Further, (Teressa) needs the fees to protect her propertyrights." (Decision and Order, p. 3).
 {¶ 40} Jonathon renews his argument on appeal. Teressa contendsthat Jonathon was earning more before he voluntarily retiredapproximately one month after he filed for divorce than she now earns, andso he can't complain about the award.
 {¶ 41} R.C. 3105.18 governs spousal support awards. Paragraph (H)of that section states: "In divorce or legal separation proceedings thecourt may award reasonable attorney's fee to either party at any stage ofthe proceedings." Further, when the court makes the award, "it shalldetermine whether either party will be prevented from fully litigatingthat party's rights and adequately protecting that party's interests ifit does not award reasonable attorney's fees." Id.
 {¶ 42} The reasonableness of attorneys fees cannot be determineduntil they are incurred, but because R.C. 3105.18(H) is prospective innature "it requires that the trial court determine that a party will beprevented from fully litigating her rights if an award of fees is notmade." Seagraves v. Seagraves (1997), 125 Ohio App.3d 98, 102. Teressatestified that she had paid her trial attorney $600 and owed him another$1,400 at the time of the hearing before the magistrate. (T. 54).
 {¶ 43} Following the court's award, there were subsequentproceedings on Jonathon's objections, as well as this appeal. As with anyspousal support award, the reasonableness of any award of attorney's feespursuant to R.C. 3105.18(H) depends on the ability of one party to pay andthe other party's need for assistance.
 {¶ 44} Notwithstanding the disparity in their actual incomes, whichwhen the decree was entered ran in Teressa's favor, not Jonathon's, therecord demonstrates that Teressa had a need for help in paying her feesand that Jonathon's assets allow him to provide help. The award wassubstantially less than the total of the fees Teressa owed, and was notin an amount much greater than a sum that would be considered nominal.See Woloch v. Foster (1994), 98 Ohio App.3d 806. We find no abuse ofdiscretion.
 {¶ 45} The sixth assignment of error is overruled.
 SEVENTH ASSIGNMENT OF ERROR
 {¶ 46} "The trial court committed prejudicial error by failingto consider the marital debts of the marriage."
 {¶ 47} Jonathon testified that he borrowed $20,000 against thebalance in his PSP account on September 5, 2000, to pay off a loan on histruck and to pay other debts. (T. 20, Exhibit E). What those other debtswere is unexplained. He argues on appeal that because some of those debtshad accrued during the marriage, Teressa "should have been heldaccountable for half of those debts." (Brief, p. 13).
 {¶ 48} Jonathon also complains that the court should haveconsidered a loan of between $8,000 to $10,000 that he obtained from hismother in 1999 in order "to be able to keep his residence." Id.
 {¶ 49} The parties and their counsel appeared before the magistrateon November 1, 2001 for a hearing on their complaint and counterclaim fordivorce. The magistrate reviewed the issues to be determined and those onwhich the parties had agreed. When the magistrate asked, ". . . are thereany debts that we need to hear testimony about?", Jonathon's attorneyreplied: "There is just one debt that I talked to (Teressa's attorneyabout) in regard to some medical debt which (Jonathon) paid for thechildren." (T. 9).
 {¶ 50} In its final decree of divorce the court ordered Jonathon topay the bill to which his attorney had referred. The representation thatJonathon's attorney made to the magistrate waived consideration of anyother debts. Therefore, he has waived the error of which he complains.Civ.R. 53(E)(3)(d).
 {¶ 51} The seventh assignment of error is overruled.
 EIGHTH ASSIGNMENT OF ERROR
 {¶ 52} "The trial court committed prejudicial error by ordering theappellant to pay to the appellee the sum of $271 for his step-daughter'sprescription."
 {¶ 53} Teressa was required to pay $271 for prescription medicinefor her daughter out of her own funds because Jonathon had removedTeressa's children from the prescription coverage that his healthinsurance provided. Teressa testified that Jonathon didn't tell her thathe canceled the coverage until after the bill was incurred, and that hadhe told her earlier she would have obtained prescription drug coverageotherwise available to her that would have paid the $271 bill. (T. 52.)
 {¶ 54} Jonathan testified that he told Teressa six or eight monthsbefore the bill was incurred that he intended to remove her children fromhis health insurance coverage because the children did not reside withhim. (T. 22).
 {¶ 55} The magistrate found that Jonathon told Teressa that herdaughter's bills would not be covered only after he had canceled thecoverage. The only evidence showing when that occurred is Teressa'stestimony that the prescription was "picked up in March" and that she"did not learn until March 23 that (Jonathon had) canceled theinsurance." (T. 51). There is no reference to the year that occurred.But, because the court ordered Jonathon to compensate Teressa for themonies she paid, we necessarily assume that those events occurred priorto the effective termination of the marriage on December 15, 2000.
 {¶ 56} The trial court rejected Jonathon's objection on thispoint, finding that Teressa had "incurred the costs due to (Jonathon's)actions and she is due reimbursement." (Decision and Order, p. 4.) Thecourt's decision was grounded on equitable considerations. The domesticrelations courts have "full equitable powers and jurisdiction appropriateto the determination of all domestic relations matters." R.C. 3105.011.We find no abuse of discretion.
 {¶ 57} The eighth assignment of error is overruled.
 TENTH ASSIGNMENT OF ERROR
 {¶ 58} "The trial court committed prejudicial error by overrulingplaintiff's exceptions to the magistrate's decision of october 23, 2002."
 ELEVENTH ASSIGNMENT OF ERROR
 {¶ 59} "The trial court committed prejudicial error by permitting amodification based on the premise that there was a clerical error in themagistrate's and court's decision and entry dated february 3, 2002."
 {¶ 60} The magistrate found that the marriage that commenced onJuly 4, 1998 effectively terminated on December 15, 2000, a period ofthirty months. However, in calculating the share of Jonathon's PSP towhich Teressa was entitled, based on the duration of the marriage, themagistrate instead employed a base figure of eighteen months, whichyielded an interest for Teressa in the amount of $7,500.
 {¶ 61} Teressa filed no Civ.R. 53(E) objections to the magistrate'sdecision. Instead, after the court had adopted the decision as thecourt's order, Teressa asked the magistrate to correct the errorconcerning the number of months on which the extent of her interest inJonathon's PSP is determined from eighteen months to thirty, arguing thatuse of the eighteen months basis to calculate her interest was a clericalerror subject to correction per Civ.R. 60(A). The magistrate agreed, andon the thirty-month basis found that Teressa is entitled to a share ofJonathon's PSP in the amount of $12,500.
 {¶ 62} Jonathon objected to the magistrate's decision. In his tenthassignment of error, Jonathon terms his objections as "exceptions." Inhis eleventh assignment, Jonathon argues that the magistrate's firstpronouncement was not a mere clerical error, and in any event was notsubject to change after the court had adopted the magistrate's decisionas the court's own order. We do not agree.
 {¶ 63} The relief which a magistrate's decision grants is noteffective until the decision is adopted by the court pursuant to Civ.R.53(E)(4). Even then, however, the court's order is interlocutory andsubject to revision unless and until a final order is entered by thecourt that determines all the claims for relief in the action. Here, thatoccurred when the court entered its decree of divorce on April 10, 2003.
 {¶ 64} The magistrate's error was a clerical error, but Civ.R.60(A) had no application to it. Civ.R. 60(A) and (B) both apply to finalorders. Both the magistrate's first decision and the court's orderadopting it were entered prior to the decree of divorce and thereforewere subject to change until the decree of divorce was journalized.
 {¶ 65} The tenth and eleventh assignments of error are overruled.
 Conclusion {¶ 66} Having overruled Plaintiff-Appellant Jonathon Jackson'sassignments of error, we will affirm the judgment of the trial court.
Fain, P.J. and Brogan, J., concur.
[1] For convenience and clarity, the parties will be identified bytheir first names.
[2] Had the magistrate valued the PSP at the time of the final hearingor when the marriage terminated, Exhibits reflecting the value of theaccount suggest that on those dates its value was likely substantiallymore than $40,000.